# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DeWAYNE THOMPSON, | Case No. 1:13-cv-00655-AWI-SKO (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED** |
| v. | |
| T. ADAMS, et al., | **(Doc. 45)** |
| Defendants. | **THIRTY (30) DAY DEADLINE** |

## INTRODUCTION

Plaintiff, DeWayne Thompson, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 and California law on May 6, 2013. This action is proceeding on two claims under the Eighth Amendment in Plaintiff's Fourth Amended Complaint (Doc. 21) against: (1) Defendants Felix, Harmon, Pendergrass, and Cruz for failing to decontaminate Plaintiff following the application of pepper spray ("decontamination claim"); and (2) Defendant Brodie for depriving Plaintiff of outdoor exercise ("exercise claim"). (*See* Doc. 23, Screen F&R; Doc. 25, Screening Order.)

On October 14, 2015, Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust the available administrative remedies in compliance with 42 U.S.C. § 1997e(a) with respect to his federal claims. Fed. R. Civ. P. 56(c)[1]; *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014). (Doc. 45.) Plaintiff

---

[1] The Federal Rules of Civil Procedure will hereinafter be referred to as "Rule *." Any reference to other statutory authorities shall so indicate.

1

filed his opposition to Defendants' motion on November 3, 2015.[2] (Doc. 48, Memo of P&A; Doc. 49, Exhs.; Doc. 50, Disp Facts.) Defendants filed a reply on November 10, 2015. (Doc. 52, Reply.) Defendants' motion for summary judgment is deemed submitted on the record without oral argument pursuant to Local Rule 230(*l*).

It is recommended that Defendants' motion for summary judgment be DENIED as the grievance procedures were rendered effectively unavailable to Plaintiff.

## DISCUSSION

### A. Legal Standards

#### 1. Summary Judgment Standard

Any party may move for summary judgment which shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino v. Baca*, 697 F.3d 1023, 1166 (9th Cir. 2012); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether a disputed or undisputed fact, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The failure to exhaust is an affirmative defense which the defendants bear the burden of raising and proving on summary judgment. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1166. The defense must produce evidence proving the failure to exhaust. *Id*. Summary judgment under Rule 56 is appropriate only if the undisputed evidence, viewed in the light most favorable to the

---

[2] Plaintiff was provided with contemporaneous notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies. *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012); *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998). (Doc. 105.)

2

plaintiff, shows he failed to exhaust his administrative remedies. *Id.*

### 2. Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532; 122 S.Ct. 983 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001).

On summary judgment, Defendants must first prove that there was an available administrative remedy which Plaintiff did not exhaust prior to filing suit. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If Defendants carry their burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

"Under § 1997e(a), the exhaustion requirement hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). An inmate is required to exhaust only those grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth v. Churner,* 532 U.S. 731, 738 (2001). However, "a prisoner need not press on to exhaust further levels of review once he has [ ] received all 'available' remedies." *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

"If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Williams*, at 1166. The action should then be dismissed without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v.*

3

*Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### 3. Summary of CDCR's Inmate Appeals Process

The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners welfare, Cal. Code Regs., tit. 15, § 3084, *et seq*. Compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims. *Woodford v. Ngo*, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010).

As of 2011, an inmate initiates the grievance process by submitting a CDCR Form 602, colloquially called an inmate appeal ("IA"), describing "the problem and action requested." Cal. Code Regs., tit. 15, § 3084.2(a). An IA must be submitted within 30 calendar days of the event or decision being appealed, first knowledge of the action or decision being appealed, or receipt of an unsatisfactory departmental response to an appeal filed. Tit. 15 § 3084.8(b). The inmate is limited to raising one issue, or related set of issues, per IA in the space provided on the first page of the IA form and one attached page (which must be on the prescribed "Attachment" form) in which he/she shall state all facts known on that issue. Tit. 15 § 3084.2(a)(1),(2),(4). All involved staff members are to be listed along with a description of their involvement in the issue. Tit. 15 § 3084.2(a)(3). Originals of supporting documents are to be submitted with the IA; if they are not available, copies may be submitted with an explanation as to why the originals are not available, but are subject to verification at the discretion of the appeals coordinator. Tit. 15 § 3084.2(b). With limited exceptions, an inmate must initially submit his/her IA to the first level. Tit. 15 § 3084.7. If dissatisfied with the first level response, the inmate must submit the IA to the second level, and to the third level. Tit. 15 § 3084.2, .7. First and second level appeals shall be submitted to the appeals coordinator at the institution for processing. Tit. 15 § 3084.2(c). Third level appeals must be mailed to the Appeals Chief via the United States mail service. Tit. 15 § 3084.2(d).

/ / /

/ /

### D. Defendants' Motion[3]

Defendants assert that Plaintiff did not exhaust available administrative remedies on either of these claims before he filed suit, entitling them to judgment. (Doc. 45.) The Court must determine if Plaintiff filed any IAs concerning these events; and if so, whether Plaintiff complied with the CDCR process; and if Plaintiff did not comply with CDCR's process, whether it was because the process had been rendered unavailable to him. *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1859 (2016); *Sapp*, 623 F.3d at 823.

#### 1. Plaintiff's Decontamination Claim

It is undisputed that Plaintiff filed IA No. CSPC-2-12-06000 ("IA 12-06000") on the events which form the basis of his decontamination claim against Defendants Felix, Harmon, Pendergrass, and Cruz. (*See* Doc. 45-1, 3:12-4:20; Doc. 48, pp. 1-7.)[4]

##### a. Defendants' Motion

##### (i) IA No. CSPC-2-12-06000

Defendants' evidence shows that Plaintiff submitted IA 12-06000 on August 30, 2012. (Doc. 45-2, Def. Undis. Facts "DUF" No. 17.) In this IA, Plaintiff complained that: he was pepper-sprayed by Officer Adams on August 9, 2012; that Defendants Harmon, Felix, and Cruz refused to allow him to properly decontaminate the effects of the pepper-spray; and that Defendant Pendergrass refused to provide medical assistance. (*Id.*, DUF No. 18.) Plaintiff requested the following relief: (1) "for matters [sic] be investigated;" (2) "Pendergrass interviewed;" (3) "for [Plaintiff's] whereabouts upon [Pendergrass'] initial (7219) medical report" to be investigated regarding whether "he was never pulled from cell after being sprayed;" and (4) for inmates Edward and Beauford to be interviewed. (*Id.*, DUF No. 20.)

On October 20, 2012, the second level of review partially granted IA 12-06000; an inquiry was completed and it was determined that staff did not violate CDCR policy concerning the issues appealed. (*Id.*, DUF No. 21.) Inmate Edward and three other inmates were interviewed in

---

[3] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[4] Though Plaintiff filed additional appeals regarding the processing and cancellation of this IA, which are discussed herein, he did not file another IA regarding the substantive allegations of his decontamination claim.

connection with this appeal, but Inmate Beauford and Defendant Pendergrass, whom Plaintiff specifically identified and requested be interviewed, were not. (*Id.*, DUF No. 22.) The second level response identified the availability of the following further relief:

> If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

(*Id.*, DUF No. 23.)

IA 12-06000 was received at the third level of review on December 18, 2012, but was cancelled as untimely on January 10, 2013. (*Id.*, DUF No. 24.) On January 22, 2013, IA 12-06000 was again received at the third level, but on February 6, 2013, it was returned to Plaintiff because he attempted to use it to appeal the cancellation decision without submitting a separate IA form. (*Id.*, DUF No. 25.)

On February 19, 2013, Plaintiff submitted a separate IA to the third level of review challenging the fact that IA 12-6000 had been cancelled as untimely. (*Id.*, DUF No. 26.) This IA was logged at the third level as IAB No. 1209421.[5] (*Id.*) On April 18, 2013, the third level denied IAB No. 1209421, stating that the Office of Appeals ("OA") had properly cancelled IA 12-6000 as untimely. (*Id.*, DUF No. 27.) Specifically, the third level found that Plaintiff received his second-level response for IA 12-6000 on October 25, 2012, but that OA did not receive it for third-level review until December 18, 2012 (i.e., 53 days). (*Id.*)

The third level decision denying IAB No. 1209421 exhausted Plaintiff's administrative remedies only with respect to IAB No. 1209421 which challenged the cancellation of IA 12-06000 as untimely. This did not exhaust administrative remedies as to the decontamination issues raised in the underlying IA -- IA 12-06000. (*Id.*, DUF No. 28.) IA 12-6000 and IAB No. 1209421 were the only relevant IAs Plaintiff submitted to the third level of review between August 2012 and May 2013. (*Id.*, DUF No. 53.)

This suffices to meet Defendants' burden on moving for summary judgment on Plaintiff's

---

[5] Inmate appeals are assigned an additional/separate tracking number when received at the third level. (*See* Doc. 45-5, pp. 1-2.)

6

decontamination claim against Defendants Felix, Harmon, Pendergrass, and Cruz. *Williams*, 775 F.3d at 1191. The burden of production thus shifts to Plaintiff to submit evidence showing that "the existing and generally available administrative remedies [were] effectively unavailable to him." *Id.*

### b. Plaintiff's Opposition[6]

Plaintiff asserts two arguments in opposition to Defendants' motion pertaining to IA 12-06000 on his decontamination claim.

Plaintiff first argues that the second-level decision on IA 12-06000 sufficed to exhaust administrative remedies on his decontamination claim. (Doc. 48, pp. 2-7.) To this end, Plaintiff asserts that, after he received the partial grant, there was no further relief that could have been granted. (*Id.*, p. 2.) Plaintiff asserts that an investigation was conducted and various persons were interviewed, thereby rendering the interviews of Inmate Edward and Defendant Pendergrass cumulative. (*Id.*)

It is true that an inmate exhausts the administrative process when the prison officials purport to grant relief that resolves the issue in the grievance to his satisfaction. *Harvey v. Jordan*, 605 F.3d 681, 684-85 (9th Cir. 2010). However, this is tempered by both whether the entire relief requested was granted and whether the inmate has been "reliably informed by an administrator that no [further] remedies are available." *Id.*, at 683-84 (citations and quotations omitted). The second-level decision did not suffice to exhaust Plaintiff's available administrative remedies as the evidence does ***not*** show both that Plaintiff was satisfied with the second-level decision and/or that he received reliable information that no further remedies were available.

Though, Plaintiff asserts that he was completely satisfied by the second-level review of IA 12-06000, his subsequent actions in repeatedly attempting to pursue it, undercut this assertion and are distinguishable from the scenario presented in *Harvey*.

//

---

[6] At the start of his Memorandum of Points and Authorities, Plaintiff states that he served requests for production of documents on Defendants, but that they filed the current motion before serving him with their responses. (Doc. 48, p. 1.) Despite this, Plaintiff specifically states "I will not move for Fed. R. Civ. P. 56(d) for I have tallied up extensive evidence (exhibits A-I hereto) to demonstrate a genuine issue and material facts being in dispute to defeat motion." (*Id.*, at pp. 1-2.)

7

1    The plaintiff in *Harvey*, received a partial grant of his IA at the first-level which
2    completely resolved the issue raised.  In *Harvey*, on August 12, 204, prison officials gave the
3    plaintiff a "115 notice of disciplinary charges" for his alleged failure to comply with a search of
4    his cell that occurred on July 29, 2004.  Prison regulations required a hearing within thirty days of
5    such a notice and certain privileges were revoked pending the hearing.  As of January 3, 2005,
6    Harvey had not been given a disciplinary hearing, so he filed a grievance complaining that he had
7    not been given a hearing and requested either that he be given a hearing with the video tape of his
8    cell extraction on the date in question, or that the "115 be dropped and [his] status be given back."
9    Prison officials granted Harvey's first request in a decision dated February 23, 2005, and
10   informed him that he could appeal within fifteen working days if he was "not satisfied" with that
11   resolution.  The Ninth Circuit held that Harvey need not appeal further since the ruling on his
12   grievance at the first level granted his request and provided the relief he sought -- a hearing with
13   the videotape.  Harvey was satisfied and did not appeal further.  It was only after six months
14   without the hearing that Harvey filed an appeal to obtain the promised hearing.

15    If, as Plaintiff here asserts, he was satisfied with the second-level review results on IA 12-
16   06000, he would not have taken any action on it after the date he acknowledges its receipt --
17   December 12, 2012.  However, the evidence shows that Plaintiff was not satisfied with the
18   second-level response.  Specifically, on February 13, 2013, Plaintiff filed an IA (No. OOA-12-
19   07052) challenging the cancellation of IA 12-06000 as untimely, stating that he was diligent in
20   trying to timely submit his appeal on the second-level review and that he would have timely
21   submitted his appeal to the third-level if the second-level review had been forwarded to him in a
22   timely fashion.  (Doc. 45-5, p. 13.)  Thus, Plaintiff's belated and self-serving assertion that he was
23   satisfied with the second-level review results on IA 12-06000 is disingenuous.

24    The second-level review of IA 12-06000 does not show that Plaintiff was "reliably
25   informed by an administrator that no [further] remedies [were] available" to meet the second
26   aspect of analysis under *Harvey*.  Instead, the second-level review of IA 12-06000 specifically
27   stated:

28

> -- Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.
> If you wish to appeal the decision and/or exhaust administrative remedies you must submit your staff complaint appeal through all levels of appeal review up to, and including the Secretary's/Third Level of Review.  Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

(Doc. 45-3, p. 24.)  The second-level review clearly required Plaintiff to proceed to review at the third-level to exhaust available administrative remedies.  There is no evidence showing that Plaintiff had been reliably informed that no remedies beyond the second-level review were available.  *Harvey*, 605 F.3d at 683-84.  Thus, the second-level review of IA 12-06000 did not suffice to exhaust the available administrative remedies.

With regard to Plaintiff's second argument pertaining to his exhaustion efforts, Plaintiff contends that, because he was transferred to Pelican Bay State Prison ("PBSP") on October 8, 2012, he did not receive the second-level review on IA 12-06000 until December 12, 2012, and that this delayed receipt prohibited him from being able to seek third-level review in a timely manner, resulting in the cancellation of his IA.  (Doc. 48, p. 3.)

Plaintiff's evidence also shows that, since he had not yet received the second-level review on IA 12-06000, he filed a duplicate on October 28, 2012, and submitted multiple CDCR 22 Inmate/Parolee Request forms ("22 Request") asking for it, and/or tracking its supposed delivery to him as well.  (*Id.*, pp. 3-4; Doc. 49, Exh. C, pp. 24-39.)

On November 22, 2012, Plaintiff filed IA No. PBSP-B12-03661 ("IA B12-03661") seeking to obtain the second-level review on IA 12-06000 from his C-File.  (Doc. 48, p. 3; Doc. 49, Exh. B, pp. 18-20.)  Plaintiff asserts that his correctional counselor responded to his requests for copies of the second-level review on IA 12-06000 by "acting defiant," causing Plaintiff to resort to "the remedial process" for recourse.  (*Id.*, p. 3.)  Plaintiff noted in IA B12-03661 that "CCI Markel is not responding to" his requests for copies of the second-level review of IA 12-06000.  (Doc. 49, Exh. B, pp. 18-20.)

Finally, Plaintiff correctly argues that Defendants offer no proof that the second-level review on IA 12-06000 was delivered to him on October 25, 2012, or that he received any

9

mailing of it that day in a timely manner. (Doc. 48, p. 4.) Defendants responded by highlighting the notation on the second page of IA 12-06000 which indicates "Date mailed/delivered to appellant 10/25/12" and assert that "it is entirely implausible that it took over a month for Plaintiff to receive his appeal response." (Doc. 52, D Reply, 5:1-6.)

However, even though Defendants point to indications in Plaintiff's exhibits that mail took approximately eight days to be delivered from PBSP to CSPC, and vice a versa, Defendants provide no evidence of the date upon which Plaintiff actually received the second-level review of IA 12-06000. Further, Defendants' assertion that "it is implausible" that it took over a month for Plaintiff to receive the second-level review of IA 12-06000 need not be accepted. First, plausible or implausible is not the standard on summary judgment. Second, there is a reason for the colloquial phrase that something has been "lost in the mail" which Defendants' evidence does not address. Finally, even assuming the second-level review of IA 12-06000 was mailed to Plaintiff at PBSP on October 25, 2012, and was received at PBSP within 8-10 days, Defendants provide no evidence that it was delivered to Plaintiff within a day or even a week of its arrival at PBSP.

Further, though Defendants rely on the third-level review of OOA-12-07052 (challenging the cancellation of IA 12-06000) which noted that Plaintiff received his second-level review response to IA No. CPSC-12-06000 on October 25, 2012, that decision provides no basis to conclude that Plaintiff actually received it on October 25, 2012, or a few days after. Defendants, likewise, fail to present any evidence to support this conclusion in their motion.

Weighing all inferences in Plaintiff's favor, it cannot be found that Plaintiff received the second-level review on IA 12-06000 on or about October 25, 2012. Plaintiff's evidence shows that he did not receive the second-level review on IA 12-06000 until December 12, 2012. (Doc. 48, p. 3.) It is undisputed that this IA was received for third-level review that same month. Thus, this IA was cancelled as untimely because the second-level review was not timely delivered to Plaintiff -- not because Plaintiff failed to comply with CDCR's procedures. The delayed delivery of the second-level review on IA 12-06000 rendered the administrative process effectively unavailable to Plaintiff, through no fault of his own. *Williams*, 775 F.3d at 1191.

//

Defendants' are thus not entitled to summary judgment on Plaintiff's claim against Defendants Felix, Harmon, Pendergrass, and Cruz for failing to decontaminate Plaintiff following the application of pepper spray, in violation of the Eighth Amendment.

### 2. Plaintiff's Deprivation of Exercise Claim

It is undisputed that Plaintiff filed IA No. CSPC-8-12-07302 ("IA 12-07302") on the events which form the basis of his deprivation of exercise claim against Defendant Brodie. (*See* Doc. 45-1, 4:21-5-18; Doc. 48, pp. 7-11.)[7]

#### a. Defendants' Motion

#### (i) IA No. CSPC-8-12-07302

Defendants' evidence shows that Plaintiff submitted IA 12-07302 on November 1, 2012. (Doc. 45-2, DUF No. 29.) In that IA, Plaintiff complained that Defendant Brodie improperly found him guilty of a rules violation and denied him the opportunity to call witnesses during the hearing. (*Id.*, DUF No. 30.) Plaintiff requested that the resulting rules violation report ("RVR") be dismissed, that Defendants Harmon and Pendergrass be examined concerning the incident, and that his yard privileges be reinstated. (*Id.*, DUF No. 31.)

On November 13, 2012, the second level of review rejected IA 12-07302 since Plaintiff failed to include a final copy of his RVR. (*Id.*, DUF No. 32.) Plaintiff was instructed to resubmit this IA, accompanied by the final copy of his RVR, within thirty days for reconsideration. (*Id.*) On January 28, 2013, the second level of review cancelled IA 12-07302 since the allowed time for its resubmission had lapsed. (*Id.*, DUF No. 33.)

#### (ii) IA No. CSPC-8-13-01099

On February 6, 2013, Plaintiff submitted IA No. CSPC-8-13-01099 ("IA 13-01099") in which he asserted that IA 12-07302 was timely and should not have been cancelled. (*Id.*, DUF Nos. 34-35.) Plaintiff contended that, because he did not receive a copy of his RVR until October 5, 2012, his November 1, 2012 submission of IA 12-07302 was timely. (*Id.*) Plaintiff also noted that the delay between his submission of IA 12-07302 and its receipt by the appeals office was

---

[7] Here again, though Plaintiff filed additional appeals regarding the processing and cancellation of this IA, which are discussed herein, he did not file another IA regarding the substantive allegations of his decontamination claim.

1  likely caused by his transfer to PBSP. (*Id.*) On April 23, 2013, the second level granted IA 13-
2  01099 (agreeing that IA 12-07302 was not untimely and should not have been cancelled) and
3  instructed Plaintiff to resubmit IA 12-07302. (*Id.*, DUF Nos. 36-37.) However, Plaintiff did not
4  resubmit IA 12-07302. (*Id.*)

5  Plaintiff's failure to resubmit IA 12-07302, despite being given the opportunity to do so,
6  suffices to show that Plaintiff did not exhaust all available administrative remedies on his exercise
7  claim against Defendant Brodie -- which meets the burden on moving for summary judgment.
8  *Williams*, 775 F.3d at 1191. The burden of production thus shifts to Plaintiff to submit evidence
9  showing "the existing and generally available administrative remedies [were rendered] effectively
10 unavailable to him." *Id.*

### b. Plaintiff's Opposition

12 For the most part, Plaintiff's evidence coincides with Defendants' evidence. However, the
13 parties differ regarding the delivery of the second-level review and instruction(s) pertaining to IA
14 13-01099 -- which is pivotal.

15 Plaintiff states that when he submitted IA 13-01099 for first-level review, it was initially
16 rejected with instructions to attach "the disciplinary or cancelled appeal." He complied as
17 evidenced by the notice he received indicating that IA 13-01099 had been processed and setting a
18 May 17, 2013 due date for the second-level review. (Doc. 48, p. 10; Doc. 49, p. 69.) Plaintiff
19 asserts that, his understanding was that the "cancelled appeal was already with legal appeal, and
20 the granting of legal appeal would already have [been] at CSP-Cor appeal staff disposal." (Doc.
21 48, p. 10.) To the best of Plaintiff's knowledge, IA 13-01099 had been granted and prison staff
22 had all of the necessary information to make a determination on the underlying issues raised in IA
23 12-07302. (*Id.*)

24 On May 12, 2013, Plaintiff filed a 22 Request inquiring of the status of the second-level
25 review of IA 13-01099. (Doc. 49, p. 70.) On May 18, 2013, Plaintiff filed IA No. PBSP-5-13-
26 01318 ("IA 13-01318") seeking an Olsen Review and copies of documents from his central file,
27 including IA 13-01099. (*Id.*, p. 75.) On May 20, 2013, Plaintiff received a response that IA 13-
28 01099 had been "granted" and was "returned" to him "via institutional mail on 5/2/13." (*Id.*)

1    However, when Plaintiff was interviewed on June 7, 2013 and agreed to withdraw IA 13-01318,
2    Plaintiff's reason for withdrawal was that he "received one copy" (of another IA) and that he may
3    "possibly have to reapply appeal," and prison staff, identified as "M. Thornton, CCII(A)" who
4    signed the form on June 7, 2013, subsequent to Plaintiff's note indicated it was "regarding copy
5    of appeal CSPC-8-13-01099, as copy is not available at this time." (*Id.*, at p. 76.)  Thus, as of
6    June 7, 2013, a copy of IA 13-01099 was not available to Plaintiff, despite his considerable
7    efforts.
8        On June 18, 2013, Plaintiff submitted another 22 Request indicating that he was aware
9    that IA 13-01099 had been granted, but that he had heard nothing, had not been interviewed, and
10   requested a copy of it "A.S.A.P. to prevent any further delays." (Doc. 49, p. 72.)  The July 12,
11   2013 response to his 22 Request merely noted "13-1099  Granted  5/2/13."
12       There is no evidence before this Court showing a date on which Plaintiff received the
13   second-level review of IA 13-01099 and Plaintiff declares that he had not seen that document
14   until Defendants filed the present motion.  (Doc. 48, p. 10.)  There is also no evidence to establish
15   that Plaintiff had any information before him to suggest that anything further was required of him
16   regarding either IA 12-07302, or IA 13-01099 which granted reconsideration of IA 12-07302.
17   Plaintiff attempted multiple avenues to ascertain the status of IA 13-01099 and was told it had
18   been granted.
19       In their reply, Defendants contend that Plaintiff did not exhaust available administrative
20   remedies on this claim since he failed to submit IA 12-07302 to the third level of review.  (Doc.
21   52, p. 6.)  Defendants assert that the notation on IA 13-01099 that it was "mailed/delivered" to
22   Plaintiff on May 2, 2013 suffices for proof that Plaintiff actually received it.  (*Id.*, p. 6, n. 4.)
23   While Defendants rely on the declaration of A. Pacillas to show that IA 13-01099 was
24   "mailed/delivered" to Plaintiff on May 2, 2013, that declaration neither sets forth the mechanism
25   and/or steps by which IA 13-01099 was "mailed/delivered" to Plaintiff on May 2, 2013, nor
26   presents any other evidence upon which to find that it ever arrived at PBSP, let alone in Plaintiff's
27   hands.  (Doc. 45-3, pp. 1-6, 34.)
28   //

Weighing all inferences in Plaintiff's favor, the Court cannot find that Plaintiff received the second-level review on IA 13-01099 informing him that he was required to act further. Thus, the Court cannot find that Plaintiff's failure to submit IA 12-07302 to the third level equated to his non-compliance with CDCR's procedure. Rather, the delayed delivery of the second-level review on IA 13-01099 rendered the administrative process effectively unavailable to Plaintiff through no fault of his own. *Williams*, 775 F.3d at 1191.

Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claim against Defendant Brodie, for depriving Plaintiff of outdoor exercise in violation of the Eighth Amendment.

### **RECOMMENDATION**

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust the available administrative remedies, filed on October 14, 2015, be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**August 5, 2016**__             /s/ *Sheila K. Oberto*
                                                                              UNITED STATES MAGISTRATE JUDGE